IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
EL DORADO DIVISION

| | |
|---|---|
| JONES FUNERAL HOME, INC. and<br>MELONY SPARKS HALLIBURTON | PLAINTIFFS |
| VS. | CASE NO. 06-CV-1097 |
| LIFE INSURANCE COMPANY<br>OF NORTH AMERICA | DEFENDANT/ COUNTER-<br>PLAINTIFF/THIRD-PARTY<br>PLAINTIFF |
| VS. | |
| JONES FUNERAL HOME, INC.,<br>MELONY SPARKS HALLIBURTON | COUNTER-DEFENDANTS |
| AND | |
| CHARLES E. BROOKS | THIRD-PARTY DEFENDANT/<br>THIRD-PARTY PLAINTIFF |

# MEMORANDUM OPINION

On September 25, 2006, Plaintiffs, Jones Funeral Home, Inc. and Melony Sparks Halliburton, filed this civil action against Life Insurance Company of North America ("LINA") in the Circuit Court of Ashley County, Arkansas. In the suit, Plaintiffs sought recovery of Eugenia Sparks' life insurance benefits under Smurfit-Stone Container Corporation Group Life Insurance Plan, number FLX-051252. The plan was sponsored by Sparks' former employer Smurfit-Stone Container Corporation and administered by Defendant LINA.

On October 27, 2006, LINA removed the case to this Court. LINA has invoked the jurisdiction of the federal courts pursuant to 28 U.S.C. § 1331 and 29 U.S.C. § 1132(e) alleging that Plaintiffs' claim for benefits is subject to and governed by the provisions of the Employee

Retirement Income Security Act of 1974 ("ERISA"), as amended, 29 U.S.C. § 1001 *et seq.*

On November 1, 2006, LINA filed an Answer, a Counterclaim against the Plaintiffs and a Third Party Complaint in Interpleader against Charles E. Brooks. LINA admitted that it had not paid the proceeds of the policy at issue because of conflicting claims made by the Plaintiffs and Brooks. LINA sought to interplead the disputed $10,000 death benefit into the registry of the Court to be distributed to the proper beneficiary as determined by the Court. LINA also requested that it be dismissed from the suit. On April 12, 2007, the Court granted LINA's motion. Thereafter, LINA deposited the disputed funds into the registry of the Court and was dismissed from the suit.

On February 11, 2008, a bench trial was held, in which Halliburton and Brooks appeared and presented evidence. During the trial, the parties stipulated to the following facts:

1. Eugenia Sparks, a resident of Ashley County, Arkansas, died on June 7, 2006. Mrs. Sparks was a former employee of Smurfit-Stone Container Corporation and was a participant in that company's Group Life Insurance Plan, No. FLX-051252, underwritten by the Life Insurance Company of North America (LINA). Under the plan, Mrs. Sparks was enrolled for $10,000.00 in life insurance benefits.

2. On January 26, 2006, a document captioned General Power of Attorney, purporting to be the act of Eugenia Sparks appointing her daughter, Melony Sparks Halliburton, as her attorney in fact, was filed in the office of the Circuit Clerk and Recorder of Ashley County, Arkansas.

3. Subsequently, counsel for Mrs. Halliburton submitted a copy of the Power of Attorney, along with a Change of Beneficiary Designation dated January 27, 2006, to

LINA, requesting that the life insurance beneficiary be changed to herself. Prior to that, Charles E. Brooks was the named beneficiary of the policy.

4. A portion of the face amount of the policy was assigned by Mrs. Halliburton to Jones Funeral Home to pay funeral expenses.

Pursuant to Rule 52(a) of the Federal Rules of Civil Procedure, the Court now enters its findings of fact and conclusions of law in this matter.

## **FINDINGS OF FACT**

Eugenia Sparks was an employee of Smurfit-Stone Container Corporation in Crossett, Arkansas. She worked at Smurfit-Stone until April 1995, when she retired. As a former employee, Sparks was a participant in Smurfit-Stone Corporation's Group Life Insurance Plan, number FLX-051252. Under the Plan, Sparks was enrolled for $10,000 in benefits to be paid to her designated beneficiary at the time of her death. At the time of her enrollment, Sparks named her daughter, Melony Sparks Halliburton, as her beneficiary.

In May 2000, Sparks began seeing Charles E. Brooks socially. During that same year, Sparks and Halliburton had a falling out. As a result, in December 2000, Sparks advised Halliburton that she was removing her as the beneficiary of her life insurance policy and that Charles Brooks would be receiving her entire estate except for her house.

Between 2000 and 2003, Sparks and Brooks became constant companions. In November 2002, Sparks changed the designated beneficiary on her life insurance policy to Charles E. Brooks, her fiancee. In July 2003, Sparks and Brooks began living together in Brooks' home outside of Crossett.

In December 2003, Sparks and Halliburton reconciled. Thereafter, Sparks and

Halliburton maintained a good relationship, keeping in contact by telephone and in person. In the fall of 2005, when Hurricane Rita damaged Halliburton's home in Beaumont, Texas, she returned to Crossett and stayed at her mother's house for approximately two weeks. During this two week stay, Halliburton visited her mother at Brooks' home where she was living.

In January 2006, Sparks became seriously ill. She was admitted to the Ashley County Hospital where her gall bladder ruptured and became septic. Sparks also suffered a heart attack and a stroke. Sparks' condition became critical and she was placed in the hospital's Intensive Care Unit ("ICU").

Upon learning of her mother's illness, Halliburton returned to Crossett. When Halliburton arrived, Sparks was unable to speak or move her limbs. On January 20, 2006, Halliburton had Sparks transferred to the Medical Center of South Arkansas ("MCSA") in El Dorado. Sparks was placed in the medical center's ICU.

On January 24, 2006, Halliburton filed in the Circuit Court of Ashley County, Arkansas, a Petition for Appointment of Guardian of the Person and Estate of Eugenia Sparks. In support of this Petition, Halliburton represented to the Court that Sparks' was unable to move her limbs and unable to speak. However, Halliburton claimed Sparks' mind was intact and that she could communicate by blinking her eyes and squeezing your hand. The petition was granted and Halliburton was appointed Sparks' guardian.

On January 25, 2006, Halliburton went to visit Sparks at MCSA's ICU. During this visit, Halliburton asked Sparks if she wanted Halliburton to be her power of attorney. Halliburton explained to Sparks that the power of attorney was a legal document that allowed her to act as Sparks' attorney in fact giving her broad power over Sparks' property. Halliburton also

explained that the power of attorney was for an indefinite period of time and that Sparks could revoke it at anytime. Sparks responded "yes" by blinking her eyes. Halliburton then helped Sparks make an "X" on the document captioned General Power of Attorney. A DVD recording of the exchange between Halliburton and Sparks was made and admitted into evidence. The signed Power of Attorney was then filed of record in the Circuit Court of Ashley County, Arkansas, on January 26, 2006.

On January 27, 2006, Halliburton signed a Change of Beneficiary Designation changing the beneficiary of Sparks' life insurance policy from Charles Brooks to herself. The Change of Beneficiary, along with a copy of the signed Power of Attorney, was then sent to Smurfit-Stone's Group Insurance Office requesting that the life insurance beneficiary be changed to Halliburton.

Sparks remained in the MCSA's ICU for 90 days. Halliburton and Brooks visited her almost daily. Halliburton stated that Sparks seemed to improve a little bit during her first three weeks in El Dorado. However, her condition deteriorated to a vegetative state after that. Brooks stated that most of the time Sparks would just lay in bed with her eyes closed. He also stated that she never communicated with him by blinking her eyes or squeezing his hand.

In April 2006, Sparks was transferred to a rehabilitation center in West Monroe, Louisiana. Halliburton and Brooks continued to visit Sparks after she was transferred to West Monroe. Brooks stated that during his visits Sparks did not know what was going on. However, he states that right before her death, Sparks mouthed the words, "I want to go home" to him. When questioned, Brooks indicated that this lead him to believe that Sparks was indeed competent. Sparks died on June 7, 2006.

After Sparks' death, both Halliburton and Brooks made claims to LINA for the $10,000

Plan benefit. Halliburton claimed that she was the beneficiary of Sparks' life insurance policy by virtue of the January 27, 2006, Change of Beneficiary Designation signed by Halliburton as Power of Attorney. Brooks claimed that he was the rightful beneficiary of Sparks' life insurance policy because on January 25, 2006, Sparks lacked the mental capacity to execute the General Power of Attorney appointing Halliburton as her attorney in fact. In light of these conflicting claims, LINA would not make payment of the Plan benefit to either party. Thereafter, Halliburton and Jones Funeral Home[1] filed suit against LINA seeking payment of the $10,000 Plan benefit. LINA filed a Counterclaim and Third Party Complaint in Interpleader against Halliburton, Jones Funeral Home and Charles Brooks. LINA was directed to deposit the disputed $10,000 Plan benefit into the registry of the Court and was dismissed from the case.

The matter is before the Court to determine the rightful beneficiary of Eugenia Sparks' life insurance policy. In doing so, the Court must decide whether, on January 25, 2006, Eugenia Sparks possessed sufficient mental capacity to execute the General Power of Attorney appointing her daughter, Melony Sparks Halliburton, as her attorney in fact. The Court must also decide whether ERISA preempts Arkansas statutory law, Ark. Code Ann. § 28-68-410, prohibiting Halliburton from designating herself as beneficiary under the insurance policy.

## CONCLUSIONS OF LAW

It is undisputed that the group life insurance policy in this case is governed by ERISA. ERISA preempts all state laws which "relate to" an employee benefit plan but which do not regulate the insurance industry as a whole. 29 U.S.C. § 1144(a). A suit by a beneficiary to

---

[1] Halliburton assigned a portion of the proceeds of Sparks' life insurance policy to Jones Funeral Home in payment of Sparks' funeral expenses.

recover benefits from an employee benefit plan relates to the plan and, thus, falls directly under ERISA. *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 62-63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987).

In this case, there is a dispute between two competing claimants for the insurance benefits in an employer-sponsored life insurance policy. There are no provisions in ERISA that expressly govern such disputes. *Equitable Life Assurance Soc'y of the United States v. Crysler,* 66 F.3d 944, 948 (8th Cir. 1995)(citing *Mohamed v. Kerr,* 53 F.3d 911, 913 (8th Cir. 1995)). However, "where there is no federal statutory law to apply in ERISA litigation, 'federal common law,' not state law should be applied." *Reid v. Conn. Gen. Life Ins. Co.,* 17 F.3d 1092, 1098 (8th Cir. 1994)(citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 56, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). Therefore, ERISA preemption makes the determination of who is entitled to plan benefits questions of federal common law. *Equitable Life Assurance Soc'y of the United States,* 66 F.3d at 948.

Here, the question is whether Eugenia Sparks possessed sufficient mental capacity to execute the General Power of Attorney appointing her daughter as her attorney in fact. To determine competency with respect to a beneficiary designation in an ERISA case, the courts look to applicable federal common law standards. *See Hill v. AT&T Corp.,* 125 F.3d 646, 648 (8th Cir. 1997).

The federal common law standard for mental incompetence requires that the donor know the nature of his property, the nature of his act, and the natural objects of his bounty, including his relationship toward them and the consequences of his act, uninfluenced by any material delusions. *Taylor v. United States,* 113 F.Supp. 143, 148 (W.D.Ark. 1953), *aff'd. sub nom.*

7

*Taylor v. Taylor,* 211 F.2d 794 (8th Cir. 1954). This must be proven by a preponderance of the evidence by the party challenging competency. *Id.* Therefore, Brooks must show by a preponderance of the evidence that Sparks was incompetent at the time she executed the power of attorney appointing Halliburton as her attorney in fact.[2]

Brooks claims that Sparks would just lay in the hospital with her eyes closed most of the time unaware of what was going on. She could did not speak and did not communicate with him by blinking her eyes or squeezing his hand. However, he did admit that several days before her death Sparks mouthed the words, "I want to go home." He stated that this made him believe that Sparks was competent.

After carefully reviewing the evidence in this case, the Court is not persuaded that Brooks has shown, by a preponderance of the evidence, that Sparks was mentally incompetent when she executed the Power of Attorney appointing Halliburton as her attorney in fact. The evidence shows that on the day in question Sparks was mentally alert. She could not communicate verbally but she could respond to questions by blinking her eyes. Halliburton asked Sparks if she wanted Halliburton to be her power of attorney. Halliburton explained to Sparks that under the power of attorney she would have broad power over Sparks' property. Sparks clearly answered in the affirmative by blinking her eyes, not once but several times. The Court finds that Sparks understood the nature and consequences of her acts on the day in question. Thus, she was

---

[2] Brooks contends that the burden of proof requires Halliburton to prove that Sparks was competent at the time she executed the power of attorney. This would be true under Arkansas law. *See Pyle v. Sayers,* 344 Ark. 354, 359, 39 S.W.3d 774, 777-78 (2001). However, the Court is required to apply federal common law in this case. As stated above, under federal common law, the burden of proof is on the party challenging competency.

mentally competent when she executed the Power of Attorney in favor of her daughter, Melony Sparks Halliburton.

Next, Brooks argues that Arkansas law prohibits Halliburton from designating herself as beneficiary under the insurance policy. As indicated above, ERISA preempts state law when it "relates to" an employee benefit plan. A law "relates to" an ERISA plan "if it has a connection with or reference to such plan." *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 96-97, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1983). The designation of a beneficiary in an ERISA Plan has a connection with or reference to such plan, preempting state law. *Lyman Lumber Co. v. Hill,* 877 F.2d 692, 693 (8th Cir. 1989); *see also Brandon v. Travelers Ins. Co.,* 18 F.3d 1321, 1325 (5th Cir. 1994), *cert. denied,* 513 U.S. 1081, 115 S.Ct. 732, 130 L.Ed.2d 635 (1995); *Krishna v. Colgate Palmolive Co.,* 7 F.3d 11, 15 (2nd Cir. 1993); *Metropolitan Life Ins. Co. v. Hanslip,* 939 F.2d 904, 906 (10th Cir. 1991); *McMillan v. Parrott,* 913 F.2d 310, 311 (6th Cir. 1990); *MacLean v. Ford Motor Co.,* 831 F.2d 723, 727 (7th Cir. 1987).

Here, Ark. Code Ann. § 28-68-410 prohibits the changing of the beneficiary of a life insurance policy under a general power of attorney. If applied in this case, it would determine the distribution of benefits under the Plan. As such, it has a "connection with or reference to such plan" and is preempted by ERISA. Therefore, it is not applicable to this case.

In conclusion, the Court finds that Eugenia Sparks was mentally competent on the day she executed the Power of Attorney appointing her daughter, Melony Sparks Halliburton, as her attorney in fact. The Court also finds that Arkansas law prohibiting the changing of the beneficiary of a life insurance policy under a general power of attorney is preempted by ERISA. Thus, it is not applicable in this case.

Accordingly, the change of beneficiary form signed by Halliburton under the Power of Attorney naming herself the beneficiary of Sparks' life insurance policy is valid. Melony Sparks Halliburton, is the rightful beneficiary of Eugenia Sparks' life insurance policy. A Judgment of even date shall be issued.

IT IS SO ORDERED, this 19th day of August, 2008.

                                                /s/Harry F. Barnes
                                                Hon. Harry F. Barnes
                                                United States District Judge